Wright, J.,
delivered the opinion of the court:
A contract for dredging was let bjr defendants to the claimant August 17, 1897, including the main channel in Mare Island Strait (California), the outer bar between the main channel and the bay and on the water front of the navy-yard, to be paid for at the rate of 10.74 cents per cubic yard of material removed. The estimates for the work were 900,000 cubic yards for the main channel, 100,000 for the outer bar, and 130,000 for the water front of the navy-yard.
After claimant had entered up the work of the improvement to be accomplished by the contract, it was ascertained by the defendants that the appropriation made by the Congress for the completion of the work was inadequate for the reason that it was discovered there was an excess of material to be excavated above the estimates upon which the appropriation was based of about 87,000 cubic yards, and to bring the work within the limit of the appropriation defendants reduced the work described in the contract by (1) lessening the depth of the excavation of the main channel from 30 to 28 feet, and (2) wholly abandoning the excavation of the main channel between stations 30 and 70 of the profile, a distance of about 2,000 feet. Previous to diminishing the'work as stated, the excavation called for by the contract had been made between stations 0 and 30, the excavation between stations 30 and 220 having been made afterwards. The effect to the abandoned work was to leave standing between the *163 incompleted part from sections' 30 to 70 a bank of variant height from 4 to 9 feet.
Claimant received payment from time to time at contract rates for excavations on proper estimates by the engineer in charge, less 10 per cent, retained until the final estimate at the completion of all the work described in the contract. The percentage so retained, including a new contract for piling, amounted to $15,744.17. Upon making the final estimate preparatory to the payment of the retained percentage, the defendants discovered that'a large quantity of silt had settled in the main channel, which they required claimant to remove as a condition to its right to receive payment of the retained percentages. Claimant refused to perform the additional work so imposed upon it, insisting that the contract did not require such performance, whereupon the inspecting officer assumed the right to decide the dispute under the provisions of the contract, and upon his decision having been taken it was against the claimant’s contention. Claimant still refused to remove the silt, then insisting, the work was outside the provisions of the contract, and that being true, the subject had not been confided to the decision of the inspection officer by the mutual stipulation of the parties, by which alone he could make a binding decision. The same insistence is renewed here, where claimant has brought its suit to recover the retained percentages.
To overthrow claimant’s contention the Government has argued that (1) under the terms of the contract the claimant was required to turn over to defendants a channel of the specified depth, and (2) the inspecting officer refused to certify that all parts of the contract had been complied with.
In support of the first branch of this argument, defendant’s counsel, amongst other subjects, refer to the appropriation act as well as the second paragraph of the contract itself, each providing for the dredging of a channel sufficient to enable all classes of liaval vessels to reach the navy-yard at Mare Island, and from this the conclusion is sought to be drawn that if the contract assumed to do less there was no legislative authority for its existence and it would therefore be void.
*164 Undoubtedly the beneficial object to be attained by the authority for the contract, and the contract itself, was the production of such a channel as described. The details by which this object was to be accomplished were, however, committed to the Navy Department to be worked out, and in which claimant had neither authority nor control. It was controlled by the terms of the contract and by the direction of the naval authorities according to the provisions of the contract. There is no pretense that claimant failed in any particular to do all that was required of it by the contract, or by the agents of the defendants appointed for the purpose by the contract, unless the refusal to remove the silt be a fault. Claimant had no voice or part in working out the purposes of the Congress expressed in the appropriation act. It did all that obligation demanded if it performed the contract required of it. That it made the excavations to the required depth and width, in the first instance, there is no dispute. The silt afterwards drifted, and settled in the bottom of the excavation without fault or blame to claimant. The material of which the silt was composed formed no part of the excavated material and was foreign to it. It was not included in the original estimates of material to be excavated, nor could it have been measured in place at any time before the dredging began, nor was it referred to in any way either in the contract or specifications.
More than eighteen months had elapsed since the abandonment of the work between stations 0 and 30 before claimant was required to remove the silt — a sufficient time, without the aid of the confined depression between those stations, to have accumulated much of the material that was deposited. How much of this was due to the abandonment of the work or to natural causes is difficult to determine, but in either case such deposit occurred through no fault or neglect of claimant. There is no reference in the contract or specifications, however construed, that could put claimant upon notice that such work would be required. As well say it was required thereafter indefinitely to keep the channel free from drift and silt as to hold it was so bound for any period at *165 which defendants’ agents might see fit to make the final survey and require the deposited material to be taken out by the contractor. The plain significance of 'section 8 of the specifications is that the material shall be measured in place, the amount excavated to be determined immediately before and after the dredging. This was done and payments made according to such measurements, less a reservation of 10 per cent, the final payment, according to section 22, to be made only after thorough inspection and soundings.
Such inspection and soundings were made and every fault discovered was removed, save only the deposits of silt, and as to this claimant chose to stand upon its construction of the contract, to which we give our adherence. It is not disputed that the channel actually excavated by the contractor was sufficient to enable all classes of vessels to pass, and but for the fortuitous circumstance of the bottom attracting a filling of silt the channel would have permanently existed as first excavated. If defendants’ agents were at fault in not foreseeing and providing against such a condition, surely justice would not require that claimant be held responsible for a happening outside of the contract. Had it been obligated to foresee and provide for a contingency like this it is probable the contract would not have been made as it was.
The truth is that the subject of settling of silt was not thought of by the parties when the contract was made, and there was no intention to include the work of its removal, and this disposes of the second branch of the defendants’ argument, for we held in Hess & Co. v. United States (39 C. Cls. R., 10), that where a subject not submitted by the contract for the decision of a third person is nevertheless decided by him his decision is of no binding force.
The views we have given compel the conclusion that claimant is entitled to a judgment for all the jaercentages it has earned and which have been wrongfully detained. Judgment will therefore be given against the defendant for fifteen thousand seven hundred and forty-four dollars and seventeen cents ($15,744.17).